IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MARTHA I. BONILLA-RAMIREZ,** <br><br> **Plaintiff,** <br><br> v. <br><br> **MVM, INC., et al.** <br><br> **Defendants.** | **CIVIL NO. 15-1586 (PAD)** |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiff Martha Bonilla-Ramírez was employed by MVM Security, a contractor of the United States Immigration and Customs Enforcement of the Department of Homeland Security "DHS-ICE"). Following her dismissal, she initiated this action against MVM, MVM's General Counsel Christopher McHale, DHS-ICE, the U.S. Department of Justice and various federal officials under Federal and Puerto Rico law, essentially complaining about gender discrimination, retaliatory discharge, and intentional infliction of emotional distress under Federal and Puerto Rico law.[1]

Before the court are (i) the Federal Defendants' "Motion to Dismiss" (Docket No. 18); (ii) defendants MVM's and Christopher McHale's "Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure" (Docket No. 26); and (iii) McHarle's "Motion to Dismiss Under Rule 12(b)(6) of the Federal Rule of Civil Procedure" (Docket No. 27). Plaintiff opposed all motions (Docket Nos. 19 and 31, respectively). The Federal Defendants replied (Docket No. 23),

---

[1] More specifically, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*; the Racketeer Influence and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*; Puerto Rico's Unjust Discharge Act, Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29 §§ 185a, *et seq.*; Puerto Rico's general anti-discrimination statute, Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 §§ 146, *et seq.*; Puerto Rico's general anti-retaliation statute, Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29 §§ 194, *et seq;* and Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141 and 5142 (Docket No. 1 at ¶¶ 45-63, and 78-80).

and followed up with a "Motion Supplementing Motion to Dismiss re: Docket Entry No. 18" (Docket No. 57). For the reasons explained below, defendants' motions are GRANTED. With this ruling, the Title VII and state claims against MVM remain, as well as the state claims against the Federal Defendants.[2]

## I.   BACKGROUND

Plaintiff worked as a Detention Officer at the Luis Muñoz Marín International Airport in Puerto Rico. In 2014, she complained to MVM about some problems she was experiencing with a male coworker, to no avail. Instead, she was removed from her normal work post, placed on an "on-call" status with a substantial reduction in work hours, and given an Employment Improvement Notice because of a violation of security procedures that -according to plaintiff- was simply fabricated.

Plaintiff filed a complaint with the Equal Employment and Opportunity Commission complaining of gender discrimination and retaliation. Later that day, she received a telephone call from her supervisor directing her to report to work the day after, warning that failure to do so could be considered "insubordination." Given that it was plaintiff's scheduled day off and she could not make the arrangements to comply with the supervisor's directive, she did not report to work. Upon reporting for work on her scheduled shift, her employment was terminated.

Plaintiff asserts to have been discriminated against because of her gender (Docket No. 1 at ¶ 11). She claims her termination was in retaliation for having complained about the coworkers' conduct. Id. at ¶ 7. She maintains that even though DHS-ICE shared supervisory responsibility for MVM employees, it failed to act on her internal complaint. Id. She posits defendants or some

---

[2] The Federal Defendants did not move to dismiss the state claims.

Case 3:15-cv-01586-PAD   Document 66   Filed 05/23/16   Page 3 of 14

Bonilla-Ramírez v. MVM, Inc., et al.
Civil No. 15-1586 (PAD)
Opinion and Order
Page 3

of them infringed RICO, defamed her character, tortuously interfered with her employment contractual obligations, and intentionally and negligently inflicted her serious emotional distress. Id. at ¶¶ 82-85. Defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   STANDARD OF REVIEW

To survive a motion under Rule 12(b)(6), a complaint must allege a plausible entitlement to relief. Rodríguez-Vives v. Puerto Rico Firefighters Corps., 743 F.3d 278, 283 (1st Cir. 2014); Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013); Rodríguez-Ortiz v. Margo Caribe, 490 F.3d 92, 95 (1st Cir. 2007). A determination of plausibility involves a context-specific task that requires courts to examine the complaint as a whole, separating factual allegations (which must be accepted as true) from conclusory legal allegations (which need not be credited). García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013); Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).

Should the factual content holistically permit the court to reasonably infer that the defendant is liable for the misconduct alleged, dismissal is not appropriate. Sepúlveda-Villarini v. Dept. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010). If the factual allegations are too conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal. S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010); Rodríguez-Reyes, 711 F.3d at 53.

## III.   DISCUSSION

### A.   RICO

Plaintiff claims entitlement to damages under RICO (Docket No. 1 at ¶¶ 78-80). Section 1962(c) of RICO makes it unlawful "for any person employed by or associated with any enterprise

engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In turn, Section 1964(c) permits a "person injured in his business or property by reason of a violation of section 1962" to bring a civil claim under RICO. 18 U.S.C. § 1964(c).

To state a Section 1962(c) RICO civil claim, a plaintiff must allege: (1) injury to her business or property caused by (2) conduct, (3) of an enterprise, (4) through a pattern, (5) of racketeering activity. Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005). Section 1961(1)(A) includes in the definition of racketeering activity:

> any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in Section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year.

18 U.S.C. § 1961(1)(A).

Plaintiff contends that MVM retaliated against her, "took similar adverse employment action against other female employees that engaged in protected activity, in violation of Puerto Rico Law No. 100," and that Law No. 100 exposes defendants to criminal liability (felony) with a mandatory sentence of incarceration for three years (Docket No. 1 at ¶ 79). But Law No. 100 exposes defendants to no such liability. See, Sections 146 and 146a of Law 100, P.R. Laws Ann. tit. 29 §§ 146-146a (providing criminal penalties consisting of a misdemeanor punishable by a fine of up to five thousand dollars or by imprisonment in jail for a term not greater than 90 days, or both). Thus, the bare contention that defendants engaged in criminal activity that is "chargeable or indictable" under state law, as required by Section 1961(1)(A) fails. For the same reason, the RICO claim must be dismissed.

### B. Title VII

#### 1. Federal Defendants

Plaintiff alleges that she was discriminated against because of her gender and subjected to retaliation in violation of Title VII (Docket No. 1 at ¶¶ 45-57). Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII liability attaches only in the event of a covered employment relationship. Camacho v. Puerto Rico Ports of Authority, 369 F.3d 570, 573 (1st Cir. 2004); Medina v. ADECCO, 561 F.Supp.2d 162, 176 (D.P.R. 2008).

The Federal Defendants state they were never plaintiff's employer (Docket No. 18 at pp. 4-7).[3] The main factor in such inquiry is the extent to which defendants controlled the details of plaintiff's work. López v. Massachusetts, 588 F.3d 69, 84 (1st Cir. 2009). Elements relevant to this determination include whether defendants determined when, where, and how plaintiff performed her job; and whether they paid plaintiff and provided her with benefits such as insurance or leaves of absence, and with tools of work. Id. at 84-85.

Plaintiff failed to plausibly allege that an employer-employee relationship existed between her and the Federal Defendants. None of the 85 allegations articulate any of the factors previously listed. To the contrary, they are linked to MVM or to MVM's employees. In that regard, plaintiff

---

[3] Plaintiff argues the Federal Defendants are estopped from raising this issue (Docket No. 19 at p. 3). She asserts those defendants admitted she was an ICE employee because responding to a complaint she filed with ICE, the Chief of the Complaints and Resolution Division addressed the response to "ICE Employee Martha Bonilla Ramírez" (Docket No. 39-1). The response is unremarkable, for it no more than consists of a standard form explaining the steps the agency undertakes to investigate formal complaints, and contains no legal or factual analysis of the issue at hand. More to the point would be plaintiff's complaint to the agency, where she described her employment status as "Ex Contract Employee MVM, Inc." (Docket No. 18-1), and to which she attached a Statement stating that she "worked … for MVM Security Inc. (MVM) a private employer who contracts with the US Immigration and Customs Enforcement." Id. at p. 3. At bottom, the estoppel argument is unpersuasive.

asserts that DHS-ICE "failed to act in response to plaintiff's initial complaint to *her employer* [MVM]" ((Docket No. 1 at ¶ 11) (emphasis added).

Plaintiff points to an email from DHS-ICE requesting her termination under the Contract between DHS-ICE and MVM (Docket No. 19, Exh. VII). Although not clearly articulated, plaintiff seems to understand this shows DHS-ICE is liable to her because MVM's employees are required to abide by ICE Minimum Standards of Employment Conduct, can get their security clearance revoked by ICE, and may be removed upon ICE's request (Docket No. 19 at pp. 3-4). But the need to comply with Federal standards does not translate into an employment relationship making Federal agencies employers of their contractor's employees under Title VII. See e.g., McGovern v. MVM, Inc., 2004 WL 2554565, *1-*2 (E.D. Pennsylvania November 9, 2004)(Court Security Officers employed by MVM were not employees of the U.S. Marshals Service, even though the USMS had some supervisory role and CSOs were required to comply with certain standards); Aponte-Rodríguez v. U.S. Marshal Service, 2005 WL 2203166, * 4 (D.P.R. September 8, 2005)(Federal defendants, including the U.S. Marshal Service, not plaintiff's employer). In consequence, the Title VII claim against the Federal Defendants must be dismissed.

    **2. McHale**

McHale argues the Title VII claim against him should be dismissed for lack of individual liability under Title VII (Docket No. 27 at pp. 3-4). Plaintiff's opposition to the motion to dismiss does not address any of McHale's arguments. What is clear from her opposition to the Federal Defendant's motion to dismiss, is that she acknowledges that no individual liability attaches to individuals under Title VII (Docket No. 19 at p. 2). To that end, see Fantini v. Salem State College,

557 F.3d 22, 29-30 (1st Cir. 2009)(pointing out that there is no individual liability under Title VII). Therefore, the Title VII claim against McHale must be dismissed.[4]

### C. State Claims[5]

Plaintiff complains of having been unjustly discharged under Law No. 80, of gender discrimination under Law No. 100, and of retaliation under Law No. 115 (Docket No. 1 at ¶¶ 57, 63, 72). McHale requests that the claims against him under those statutes be dismissed (Docket No. 27 at pp. 8-12).

#### 1. Law No. 80

Law No. 80 makes certain employers liable for payment of an indemnity to employees hired for undefined term who are dismissed without just cause. P.R. Laws Ann. tit. 29 § 185(a).[6] That said, it does not contemplate individual liability. Pacheco-Bonilla v. Tooling & Stamping, 281 F. Supp. 2d 336, 339 (D.P.R. 2003); Flamand v. American International Group, Inc., 876 F.Supp. 356, 364 (D.P.R.1994). So the Law No. 80 claim against McHale must be dismissed.[7]

#### 2. Law No. 100

Law 100 is Puerto Rico's general discrimination statute. Until the Puerto Rico Supreme Court's decision in Rosario-Toledo v. Distribuidora Kikuet, Inc., 151 D.P.R. 634 (2000), most courts in this district had refused to recognize individual liability under Law No. 100. Gómez-

---

[4] The court notes that a sister court reached the same conclusion and dismissed all claims against McHale in his official and personal capacity in a complaint filed by another MVM employee. See, Civil No. 15-1850 (GAG), Docket No. 23.

[5] It is unclear whether these claims were brought against all or some of the defendants.

[6] The indemnity consists of: (A) two (2) months' pay plus one (1) week's pay for each completed year of service in case of employees with up to five (5) years of service; (B) three (3) months' pay plus two (2) weeks of pay for each completed year of service in case of employees with more than five (5) but less than fifteen (15) years of service; and (C) six (6) months' pay plus three (3) weeks' pay for each completed year of service in case of employees with fifteen (15) or more years of service, P.R. Laws Ann. tit. 29 § 185(a). See, Soto-Lebrón v. Federal Express Corp., 538 F.3d 45, 55 (1st Cir. 2008)(describing Law No. 80 compensation formula).

[7] For a comprehensive discussion of different aspects of Law No. 80, see J.L. Capó-Matos, in M.J. Caterine (ed.), *Employment at Will: A State-by-State Survey*-Puerto Rico Chapter (2011), and 2014 Supplement.

Perdomo v. Walgreens of Puerto Rico, Inc., Civil No. 13-1635, at p. 3, Docket No. 45 (PAD); Bonilla-Pérez v. Citibank NA, 892 F.Supp.2d 361, 366 n.2 (D.P.R. 2012); Maldonado-Cordero v. AT&T, 73 F.Supp.2d 177, 184 (D.P.R. 1999); Figueroa v. Mateo, 939 F.Supp. 106, 107-108 (D.P.R. 1999). In Kikuet, however, the Puerto Rico Supreme Court held that a supervisor in a sexual harassment action brought under Law No. 100, Law No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29 §§ 155, *et seq.*, and Law No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29 §§ 1321, *et seq;* may be sued in his individual capacity.

Whether Law No. 100 imposes liability for acts other than sexual harassment appears to remain unresolved by the Supreme Court of Puerto Rico. See, Ramos-Santiago v. WHM Carib, LLC, 126 F.Supp.3d 211, 216 (D.P.R. 2015)(so recognizing in pointing out a split between different panels of the Puerto Rico Court of Appeals on whether individual liability under Law No. 100 extends beyond sexual harassment). The reason for the ambiguity is that the Kikuet opinion begins with the following inquiry:

> [d]oes the definition of "employer" contained in labor laws that prohibit discrimination in employment, sexual harassment, and gender discrimination extend to a company president and supervisor **of an alleged victim of sexual harassment** when he was directly engaged in the conduct charged against him?

Kikuet, 151 D.P.R. at 638 (emphasis added). But it then defined the controversy as:

> Whether the term "employer' includes its agents, officers, administrators and supervisors, among other persons that are part of the company, when it is alleged – as in this case - and subsequently shown that they engaged **in conduct banned by the mentioned statutes**.

Id. at 640 (emphasis added). Law No. 100 is one of the "mentioned statutes" that Kikuet refers to, along with Laws No. 69 and 17. By extension, the Puerto Rico Court held that the individual defendant was an employer under Laws No. 17, 69, and 100, and as such, was personally liable

for his own acts of sexual harassment. Kikuet, 151 D.P.R. at 644. The Supreme Court noted that Law No. 17 provides that any person responsible for sexual harassment in employment, as defined by article 11 of Law No. 17, shall incur in civil liability. Id. at 645. It found evident that article 11 is not limited to the real employer or company owner, but extends to any person liable for the conduct in question, without distinctions of any kind. Id. All the same, whether the same analysis applies to Law No. 100, which imposes liability to any employer as opposed to any person, is not so evident.

Nonetheless, in its holding, the Puerto Rico Supreme Court specifically relied on the definition of employer under Laws No. 17, 69, and 100, all of which include any natural or juridical person, and its agents.[8] And as stated in Santiago-Ramos, on that basis, the Supreme Court's reasoning may arguably extend to all of the above mentioned statutes, including Law No. 100. 126 F.Supp.3d at 217. Yet Santiago-Ramos identified another source of ambiguity. Six months after its Kikuet decision, the Court issued a resolution denying reconsideration. See, Rosado-Toledo v. Distribuidora Kikuet, Inc., 153 D.P.R. 125 (2000). In such process, it narrowed its analysis exclusively to the language of Law No. 17, relying on Law No. 17's definition of employer – which is similar to Law No. 100's definition in that it includes any natural or juridical person and its agents – and in the distinction between the remedies available against any person from those available exclusively against the employer – the employer's potential obligation to hire, promote, or reinstate the employee. 153 D.P.R. at 131. According to the Supreme Court, had the lawmakers intended to exclude individual liability, they would not have made that distinction. Id.

---

[8] Under Law No. 100, the term "employer" "[i]ncludes any natural or [juridical] person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or [juridical] person." P.R. Laws Ann. tit. 29 § 151(2).

That distinction is lacking in Law No. 100, which only provides remedies against any employer who discriminates against an employee. Still, as pointed out in Santiago-Ramos, "[d]espite this variance … the Puerto Rico Supreme Court did not expressly limit the holding … to the provisions of Law No. 17." 126 F.Supp.3d at 217. That is why the consensus among courts in this district is that after Kikuet, Law 100 should be read to recognize individual liability in all instances of discrimination covered by the statute. See, Ruiz-Jusino v. Sears Roebuck, 2013 WL 3821608, at *4 (D.P.R. July 23, 2013); Otero-Merced v. Preferred Health Inc., 680 F.Supp.2d 388, 392 n. 5 (D.P.R. 2010); Torres-Santiago v. Alcaraz-Emmanuelli, 553 F.Supp.2d 75, 86 (D.P.R. 2008); Díaz v. El Día, Inc., 2005 WL 2333645, *3 (D.P.R. Sept. 23, 2005).

With this background, the complaint needs to be examined for sufficiency under Rule 12(b)(6), to assess whether McHale partook in prohibited discriminatory acts against plaintiff. The allegations identify him as a corporate counsel for MVM, who supervised and/or was responsible for MVM's Puerto Rico operations with regards to human resources decisions, and was the person to whom EEOC complaints were faxed, and therefore is responsible for MVM human resources decision to terminate plaintiff's employment (Docket No. 1 at ¶ 13).

That somebody may have received an EEOC complaint in a managerial HR capacity does not make her liable for a termination under Law No. 100. See, Santiago-Ramos, 126 F.Supp.3d at 219 (questioning sufficiency of allegations against Senior Corporate Director of Human Resources, alleged to have been consulted about termination, and who allegedly "was aware of, approved, and/or ordered" plaintiff's termination). Indeed, the complaint focuses attention on plaintiff's senior supervisor, Jennifer Morales, as the one linked to the acts of which plaintiff complains. See, Docket No. 1 at ¶¶ 18, 30, 31, 34, 35, 36, 50, 52. What is more, the termination

letter is signed by an HR & Legal Specialist, not McHale. Hence, the Law No. 100 claim against McHale must be dismissed.

### 3. Law No. 115

Law 115 prohibits retaliation in the workplace. The question of whether it permits individual liability remains unanswered by the Puerto Rico Supreme Court, and has led to conflicting results among sister courts in this district. *Compare* Rivera Maldonado v. Hosp. Alejandro Otero López, 614 F.Supp.2d 181, 197 (D.P.R.2009) (finding no individual liability under Law 115, relying on findings by the Puerto Rico Court of Appeals), *with* Hernández v. Raytheon Serv. Co. P.R., 2006 WL 1737167, *2 (D.P.R. Apr. 27, 2006) (concluding the opposite, relying on Kikuet's construction in favor of employees in discrimination cases).

The Puerto Rico Court of Appeals issued instructive decisions comparing the language and purpose of Law 100 with that of Law 115. See Vargas Santiago v. Álvarez Moore, No. KLAN 200601036, 2006 WL 3694659 (P.R. Cir. Nov. 29, 2006), cited with approval in Rivera Maldonado, 614 F.Supp.2d at 197; Sánchez-Barreto v. Swiss Just, No. KLCE 0300904, 2003 WL 23336311 (P.R. Cir. Nov. 6, 2003). In both decisions, the Court of Appeals determined that no individual liability exists under Law No. 115.

The court has carefully reviewed the text of Law No. 115, statutory history, the decisions on the matter, and McHale's arguments in support of his motion (which remain *de facto* unopposed), and is persuaded the statute does not carry individual liability. Law No. 115 derives from Law No. 65 of July 3, 1986. See, Sánchez-Barreto, 2003 WL 23336311 at * 3 (so noting); *Report of Committee of Labor and Veterans Affairs of House of Representatives on Senate Bill 987* ("Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. del S. 987")(later enacted as Law No. 115) (October 25, 1991) (pointing out that bill

sought to expand the protections set in Law No. 65). Law No. 65 amended Article 2 of Law No. 80 to specify that an employee's assistance to, or expressions about the employer's business in an administrative, judicial or legislative investigation would not be considered just cause, and to provide for reinstatement and back pay in those cases. See, Law No. 65 of July 3, 1986; *Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80 de 30 de mayo de 1976*, as amended (2014), prepared by the Department of Labor and Human Resources of Puerto Rico at p. 12 (summarizing Law No. 65). As stated earlier, Law No. 80 does not recognize individual liability.

Law No. 115 expanded the core protection of Law No. 65 into an action for retaliation (1) prohibiting discharges, threats, or discrimination against affected employees with respect to terms, conditions, compensation, benefits or privileges of employment; (2) authorizing recovery of double emotional and "real" damages, lost pay and benefits; and (3) setting an evidentiary framework to govern claims under the statute. In addition, it amended Article 2 of Law No. 80 to qualify the definition of just cause related to the employee's expressions before administrative, judicial or legislative bodies, such that to be protected, those expressions cannot be defamatory or contain privileged information. Nevertheless, it defined the term "employer" as a person with one or more employees, including the employer's agents. See, Law No. 115 of December 20, 1991.[9]

Finally, Law No. 115 was amended by Law No. 169 of September 29, 2014, to include as protected employee expressions not only those given in connection with administrative, judicial or legislative investigations, but those provided or attempted to be provided as part of internal company investigations. As relevant here, the term "employer" was redefined, to mean any natural

---

[9] The definition is more limited than the one set in Law No. 100 (cited at footnote 8).

or juridical person who employs persons through compensation and its agents and supervisors. Id.[10] The term, however, was not amended to adopt Law No. 100's definition.

From the 2014 amendments, the employer is the entity that links employees to the workplace through compensation. Supervisors and agents do not compensate employees. In that sense, reference to supervisors and agents seems more geared toward ensuring coverage than to create individual liability. For that reason, the court does not read Law No. 115 as a source of individual liability. Liability attaches to the employing entity itself, which in turn must respond for the acts or omissions of its agents and supervisors under the statute.[11] Consequently, the Law No. 115 claim against McHale must be dismissed.[12]

## IV. CONCLUSION

In view of the foregoing, defendants' motions to dismiss at Docket Nos. 18, 26 and 27 are GRANTED. As a result:

(i) The RICO and Title VII claims against the Federal Defendants are dismissed.

(ii) The claims against McHale are dismissed.

(iii) The RICO claim against MVM is dismissed.

---

[10] The Statement of Motives states that the Puerto Rico Legislature intended to broaden the definition of employer. And thus the statute includes within the term "employer," profit and nonprofit entities, as well as supervisors, municipalities and public corporations. In addition, the Statement of Motives professes the intent to align ("equiparar") Law No. 115 with Title VII, albeit it is not clear with respect to which provisions.

[11] As noted above, the Legislature intended to align Law No. 115 with Title VII. Even though it is unclear what such intent refers to, it is significant that Title VII does not recognize individual liability.

[12] Separate and apart from Law No. 80, Law No. 100 and Law No. 115, the complaint includes reference to Articles 1802 and 1803 of the Puerto Rico Civil Code, supra *(*Docket No. 1 at ¶¶ 57, 63, 72, and 82*)*. As stated earlier, Article 1802 is Puerto Rico's general tort statute. It provides that a person who by an act or omission causes damages to another through fault or negligence shall repair the damage so done. P.R. Laws Ann. tit. 31 § 5141. Article 1803 applies the principle of *respondeat* superior to Article 1802 claims. Pagán-Cólon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 16 (1st Cir. 2012). To the extent a specific labor or employment statute covers the conduct for which a plaintiff seeks relief, she is barred from relying on the same conduct to support a claim for damages under Article 1802. See, Santana-Colón v. Houghton Mifflin, 81 F.Supp.3d 129, 140-141 (D.P.R. 2014)(so recognizing). The complaint is devoid of allegations against McHale other than those attempting to link him to asserted violations of employment statutes. With that in mind, the court does not read the complaint as raising claims against McHale under Articles 1802 or 1803 of the Civil Code.

Given that only the state law claims remain against the Federal Defendants, they shall answer the complaint as to those claims not later than June 3, 2016.[13]

**SO ORDERED**.

In San Juan, Puerto Rico, this 23d day of May, 2016.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge

---

[13] Those claims also remain as to MVM, but MVM answered the complaint at Docket No. 11.